[No. 48-40328-1.   Division One.   October 27, 1969.]
Panel 1

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT L. NUCKOLS, *Appellant.*

*Hohlbein, Church, Sawyer & VanDerhoef,* for appellant.

*Charles O. Carroll, Prosecuting Attorney,* and *Jerry Reiss, Deputy,* for respondent.

FARRIS, J.—Defendant Robert L. Nuckols appeals from a conviction for assault in the second degree.

On December 13, 1967, the defendant, armed with a 9 millimeter pistol, with two companions, went to the apartment of one Delores Cantu. They believed that Miss Cantu would be able to tell them the whereabouts of one Dave Nelson who was suspected of having ransacked Nuckols' apartment the night before.

Robert Nuckols discovered Miss Cantu in bed, confronted her with the pistol and demanded to know where Dave Nelson was. Miss Cantu told the defendant that she did not know. The conference terminated when Miss Cantu was shot through the breast.

Robert Nuckols and his companions telephoned the police and an ambulance. When an officer of the Seattle Police Department arrived, the two companions told him that Nuckols had shot Miss Cantu and gave the officer an explicit description of Nuckols. The officer went to the back door to check out the premises and there he saw a man with long blonde hair, wearing cowboy boots who met the description given to him for Nuckols. "Are you the one who shot the girl?" the officer asked. "Yes," Nuckols responded.

At the trial, Miss Cantu testified that Nuckols had put the gun first to her head in a threatening manner and then to her breast where it discharged. Nuckols denied ever aiming the gun at Miss Cantu and maintained that the shooting was accidental. He said that he had removed the pistol from his belt in order to put it on the table next to the bed, but when Miss Cantu attempted to get out of the bed he pushed her back into the bed with the hand carrying the gun and it discharged. Physical evidence indicated that the bullet passed through Miss Cantu's body, the bed and the floor below.

Defendant's first assignment of error attacks the admission of the statement "yes" in response to the inquiry by

the arresting officer. He argues that the officer intended to arrest him and therefore could not begin interrogating without first apprising him of his constitutional rights. As authority, he cites *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966).

In *Miranda* there was incommunicado interrogation of individuals in a police dominated atmosphere. The United States Supreme Court held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation, unless the suspect has been warned of his rights and has made a knowing and intelligent waiver of those rights. Custodial interrogation is an essential element of the *Miranda* decision. Custodial interrogation was defined in *Miranda,* at 444:

> By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of this freedom of action in any significant way.

(Footnote omitted.)

The record indicates that the defendant was not in custody at the time he answered the officer's inquiry. Nor can it be said that he was deprived of his freedom of action in any significant way. He had not been placed under arrest nor was there any indication, at the time of the query, that he was not free to leave. See *Orozco v. Texas,* 394 U.S. 324, 22 L. Ed. 2d 311, 89 S. Ct. 1095 (1969). As the trial court correctly stated, the officer was still investigating and was not interrogating the defendant in the sense of the decisions referred to. The question and answer were properly admitted.

Defendant next asserts that there was insufficient evidence to convict him of the charge. He relies upon the conflict between the evidence submitted by the state and that given by the defendant. Where there is a factual conflict in the evidence, it is the function of the jury to resolve that conflict. *State v. Holbrook,* 66 Wn.2d 278, 401 P.2d 971 (1965); *Seattle v. Rhodes,* 72 Wn.2d 696, 434 P.2d 579

(1967). The state's evidence was sufficient to establish the elements of the offense. The jury believed the state's witnesses.

The judgment is affirmed.

JAMES, C. J., and SWANSON, J., concur.